And I would just like to take a moment to recognize Judge Selya's funeral that took place earlier this week. He sits over here to our left, closest to the bench. In almost 40 years of service on this court, Judge Selya demonstrated a mastery for the art of judging, a prominent commitment to the rule of law, and an abiding belief in the power of collegiality and civility. He is already very much missed, and we will try to carry on as a court with thinking of how he acted. And I want to say one additional thing before we begin. This is my very first time sitting in the center chair here, and it's a particular honor to be sitting with Judges Howard and Lynch as prior Chief Judges. They are essential figures in the history of this court. They are also essential figures in my own development as a lawyer and now as a judge, so this truly is a special honor for me. With that, we can begin. Thank you, Judge. I'll put us on the record. Today's cases will be called, as previously announced, and the times will be as allotted to counsel. The first case today is number 24-134, Walter Aceituno v. United States. At this time, would counsel for the appellant, United States, please come to the podium and introduce yourself on the record to begin. May it please the court, Lauren Zurier on behalf of the government, and I'd like to reserve two minutes for rebuttal, please. You may. Thank you. The rare and extraordinary writ of quorum nobis should not have been issued in this case for two independent reasons. Either of those reasons by themselves provide grounds to quash the writ. The first reason is that the petitioner has not provided an adequate explanation for his total lack of action in seeking relief during the more than four years he spent in Guatemala. The second reason is that petitioner's immigration attorney did not fail to provide constitutionally deficient advice by focusing on deportation as the consequence of pleading guilty. That is in accordance with pedia. With respect to the first reason, the purpose of requiring an adequate explanation, some courts describe it as a sound reason for a delay, is to protect the finality of judgments because quorum nobis itself, unlike 2255, for example, does not have a statute of limitations associated with it. During this litigation, there have been three different explanations offered for why petitioner did not take any steps after he arrived in Guatemala and his immigration proceedings were over in this court for four years. The first explanation is that he did not seek any relief earlier or take any steps, contact an attorney and so forth, because he thought he had no options left. And he reached that conclusion without consulting with an attorney or doing anything else to verify his subjective conclusion. A subjective conclusion like that cannot be an adequate explanation for delay because it places the decision of whether to seek relief solely at the whim of the petitioner. He could have been in Guatemala ten years and only contacted an attorney then and we have the exact same explanation. And there is no justification for that. So this had a function of both the length of time and the failure. So let's say for a year I didn't think I had it and then the opportunity came to me. Would I think about that differently? Is it the five years that mattered or just the fact? I think it's a combination. Certainly within the first year, that would be the time you'd expect to have for 2255. So that's not an unreasonable amount of time in which to act. And there have been cases in this court, as with I think George, where skilling had been decided in 2010, 15 years after the guilty plea. And something like an external precipitating event like a Supreme Court decision can also provide a reason why there was a delay, why the delay was justified. Because there was no way of knowing what the law would be. But here, that's not the case. Here, the petitioner had, he knew before he left the country, he was told, ICE told him he couldn't come back in. This was contradictory to what his... So how about this? The law is definitely better today than it was in 2013, 14, 15, as I kind of read the cases. I'm not saying that necessarily he has a good and effective assistance claim, but it seems like the ABA rule changed. There's some other case law that at least is a little bit better for him. Does that matter? And when he has to bring it? No. Because, for a couple of reasons. First is that the law may be better today in terms of the scope of interpreting Padilla, but that doesn't change the fact that we're assessing the advice that his attorney gave in early 2014, late 2013, whenever those colloquies were held. The second is that... I mean, there's one way to think of it. The other way is, well, maybe we've refined how we think about Padilla. And so, you know, the development of the law might not necessarily... This is a new rule. It's just we've developed sort of that we think Padilla actually means more than just... Except you're still allowing the petitioner to be in the driver's seat for all of those things. You know, had he called up his attorney and said, I've got conflicting information. My fellow detainees at the detention center say I can come back in five years. ICE tells me I can't come back ever. I don't know what's going on. What's the answer? He never did either of those things, even though he said he was very upset and surprised to find out when ICE gave him the form and said he couldn't ever come back, he didn't do anything. Certainly, that should have at least prompted him. The ineffective assistance of counsel law in the immigration context is derived in part from the much more serious ineffective assistance of counsel doctrine in criminal law. In criminal law, we judge the ineffective assistance claim as of the time the advice is given. Our law is quite clear there that counsel is not expected to predict the course of the law, subject to a few exceptions, like the issue is the subject of a circuit split on its way to the Supreme Court, in which case the advice would be that the law may be changing on this point. Here is the view of the different circuits. The ineffective assistance law in the criminal context is, of course, of constitutional dimension, less so in the immigration context. I take it your argument is that immigration counsel who advised the petitioner here absolutely complied with the Padilla case, and that no circuit has ever adopted, much less in the context of quorum nobis, a rule requiring counsel to predict any post-Padilla development. Yes, that's exactly the government's position. And I think counsel himself recognized that position in his testimony. Yes, I'm disturbed by the district court's mischaracterization of what counsel actually said. I went back to the transcript. What counsel said was contrary to the arguments being made, I consider it that I gave the advice required by Padilla. Yes. He also did say, I suppose hypothetically, if someone had come to me for a consultation on immigration law over the next 20, 30, 40 years, that then we might have talked about hypotheticals. I think, yes, the counsel did not admit that he had violated Padilla. He very carefully responded with, there is an argument to be made, or there is certainly an argument to be made, that when someone comes to you for a full-blown immigration consultation, who has two kids, who might be American citizens, you should talk to them about what might be coming down the road 5, 10, 15, 20 years from now. Of course, that's exactly what Padilla doesn't require. So it's an error of law. Yes, because there was no dispute in what the testimony was. His testimony that he did not admit to violating Padilla, and that's not disputed. No, it's two different points I'm trying to make. Yes. One is the mischaracterization of what counsel actually said. So the evidence does not support that there is any Padilla violation. But to the extent the district court was relying on the later testimony, that is an error of law, because that was not what was required at the time. Yes, Your Honor, and the government did argue that below. Padilla has never been expanded as broadly as the district court found. I don't know feasibly how a criminal attorney certainly could advise his client about all the ins and outs of immigration law. Just in reading the regulations and statutes myself, I came across conflicts I could not explain. So I — Yes, we have a hard time often working our way through the immigration regulations. So Padilla is very clear that it's limited to deportation. And you could really tell that in two ways. First, the court says the cert was granted only on the question of deportation. And second, there's a concurring opinion by Justice Alito and a dissent by Justice Scalia. And in both of those opinions, they discuss all the things that are going to flow from the court's break with the collateral consequences doctrine, which had been in place before them. And even Padilla even says, right, that in some points, if the law is really complicated on deportation, you don't have to give definitive deportation advice. You just have to say there may be adverse consequences. Yes, and that's exactly what happened in this case. The plea agreement was very thorough. It basically — I think it almost paraphrased Padilla, but it basically said — it's on page G, the government's appendix, page 257. And it says something like, you know, you're presumptively going to be deported because you're pleading guilty to an aggravated felony. Immigration's law is very complicated, and no court and no attorney can tell you exactly what's going to happen with all the other consequential things that could arise. And then at the plea colloquy, the court just reminded the defendant that you're going to be deported. And he knew he was going to be deported. There's no doubt about that. And that's what Padilla required him to know. Can I just ask a factual matter? Yes. Is Petitioner still being held in detention? No. He has been at home in Rhode Island with his family on bond since the end of the proceedings in the immigration court in California. He was at home while the Ninth Circuit was deciding his petition, which was eventually denied. I'm sure my sister can address more specifically, but my understanding is he's at home and he is still in the country. Okay. The government would ask this court to quash the petition on either or both of those grounds. But certainly, and additionally, there is a fourth prong of quorum novus. And this case does not deserve a discretionary grant of quorum novus. The record doesn't compel a grant of quorum novus here because the petitioner is factually guilty. That's freely admitted. He admitted to it, again, on the stand during the detention hearing. From the government's perspective, and particularly given the passage of Should that be a requirement? If you had true and effective assistance, it creates prejudice. We understand that to be under Strickland, but yet certainly the evidence is a jury. Could have found him guilty. I'm looking at the case of Williams, Your Honor, where I believe the court went on about the nature of the evidence and had assumed that some of the other prongs were met. So there was a defense here. I mean, there was an articulated defense. There was an articulated defense that was not articulated until the hearing. This case pleaded out without any of the normal trial preparations occurring. You know, Lee v. United States is not something we're contesting on appeal. That would have been a factual finding we couldn't contest. At any rate, the fact that the defendant is factually guilty and has admitted it as recently as last year is just another reason to quash the petition. Thank you. Thank you, Counsel. Thank you, Counsel. At this time, would Counsel for the appellee please introduce herself on the record to begin? Good morning. Catherine Essington on behalf of the petitioner, Walter Asituno. Good morning. Your Honors, I'd like to start first by emphasizing the standard of review in this case. The ultimate standard of review being whether the district court judge abused his discretion in granting the writ. But he has to make legal findings at least in part embedded in that, doesn't he? Yes. But it's interesting to note that with respect to the reasonableness of any delay or the sound reason requirement, that also appears to be an abuse of discretion standard. And I cite in my brief, Fount, second court. Do you say fundamental defect is a question of law? I'm saying that the reasonableness. Yeah, I'm asking you. The fundamental defect prong, is that a question of law? That would be a question of law, Your Honor. And it's my understanding, again, that the government is not contesting the prejudice prong of Strickland. But I would agree that with respect to the deficient performance prong of ineffective assistance, that would be a legal question. With respect to the time period involved here, I disagree with my sister that there were different explanations given. I think he has been consistent in saying that he received bad legal advice in terms of what his options were. And received, did not, was not aware, was not advised about trying to withdraw his plea at any time. It's not on, I think the government changed the burden here. Sorry. Your statement causes me to ask this question. Are you saying he was never advised he had the option of not pleading guilty or of attempting to withdraw his plea? I'm certainly, I'm sure he was advised he had the option of going to trial, if that's what the court's asking. But he did testify at the hearing that he was never advised that he could attempt to withdraw his guilty plea. That's correct. I'd like to talk about the deficient performance prong. Are you saying that is ineffective assistance of criminal counsel? I'm not saying that is ineffective assistance because, again, I think the deficient performance has to be judged at the time of the entry of the plea. So then, you know, any. And it was definitely in his interest because he avoided mandatory minimum sentences. He would have been in prison a lot longer if he had not plea bargained, correct? Presumably, yes. But, again, the government is not contesting the prejudice prong with respect to Strickland. And there's lots of cases that I cited in my brief that talk about how it would be rational for a defendant in his circumstances, even if he was facing a long prison sentence, to go to trial nonetheless because of this very serious nature of deportation. No, he was advised as to the effects of deportation. He knew all of that at the time. That is correct. He did freely admit in the Quorum Novus hearing that he was advised that he would be subject to mandatory deportation. What this case. And that it would render him ineligible for certain forms of relief. I think the testimony is more mixed about that. I mean, Attorney Watt testified that he advised the defendant that, Mr. Astutino, that he could petition for withholding of removal. It was clearly lost asylum. He couldn't seek asylum, but he could seek the Convention Against Torture and Withholding of Removal. So the claim is that there was an obligation to know that he was going to be subject to a permanent bar. All of those things didn't work out for him. And that that's the thing that the lawyer, that he, you know, didn't know. And the lawyer didn't know, presumably, either. And so that's your argument, right? That's correct. That the lawyer didn't know it and didn't advise him on it is the ineffectiveness? That's correct. And it's our argument that the statute was very clear here. I mean, this is not something that's directly addressed by Padilla. And I would say also with Okay, develop that, because the government says you are trying to expand Padilla and you are trying to do it in the context of quorum nobis where that's not permitted. So let's take it in two parts. You admit that you are expanding on the protections articulated in Padilla. Respectfully, I do not. I think, again, this was not directly raised in Padilla. But I would suggest that Padilla Well, if it's not directly raised, then Padilla doesn't entitle you to it. I would respectfully disagree with that. I think Padilla, the issue in Padilla was at the time that Mr. Watt gave the advice that you can point to that shows that if Padilla doesn't say it, some other case says it, that a lawyer would understand that that's the advice they're supposed to give. I cannot point to a specific case other than Padilla itself, which I think has language about banishment and exile and talks about deportation consequences, not just deportation itself. And I would argue that permanent bar of reentry is part of a deportation consequence. Again, the law, you know, there's still no Okay, fine. You say the government's reading of Padilla is wrong. Your reading is correct. Second issue. Issuance of the writ of coram nobis is hen's teeth rare. Okay. If there is ambiguity about it, then it would seem to me that you can't use coram nobis as a platform to resolve ambiguity about what immigration counsel's obligations were. I respectfully disagree with that as well. I mean, I think this court and the district court has a lot of discretion with respect to coram nobis petitions, and obviously the interest of justice is one part of that. As to that point, can I take you back to an answer that you gave earlier, much earlier, actually? If the question of whether the performance was constitutionally deficient is a legal question, and if we were to determine that there was no fundamental error, do you still say that there was discretion to grant the writ? I would say I don't believe so because I think the second coram nobis prong requires a fundamental error. So some errors of law automatically by a district court automatically mean there was an abuse of discretion. Some don't. I just want to know which one you think this category is in, and I take it from your answer now, you would agree that if we think that there was not constitutionally deficient performance, then we must reverse in this case. Yes, as to the second part of that question, the first part I'm not sure I fully understood. You know, again, it's my argument that at the time of the plea, the statute with respect to permanent bars to reentry was clear, and it was deficient performance under Padilla because the statute was clear, and that that was part and parcel and part of this deportation. Yes, I understand your substantive argument. I was just going back to the standard of review because I was unclear what you said the first time. Yeah, so I mean I agree that that is a legal conclusion of the court that the district court judge made in this case. It appears to really be one of first impression. I realize that Chan briefly touched on it, but when I was looking at Chan again, it really appears to be dicta in that case. So I don't know that any, certainly any federal circuit court has reached that issue. But again, you know, the quorum no position. But at its core it just comes down to your position is the word deportation in Padilla doesn't really mean deportation. It really means all subsequent immigration, substantial immigration consequences. Well, yes, but it's not just the word deportation. I mean the opinion itself really talks about deportation consequences, and I think it's, you know, part of the consequence of deportation. And again, the banishment and exile language, which to me suggests more than just the physical act of deportation, but is really talking about lifetime banishment or, you know, inability to reenter at that point. I just, I would point to, back to the reasonableness of any delay. I mean, the COVAX decision of the Second Circuit found. So, I mean, you don't support Judge, it seemed from your brief, you didn't support Judge McConnell's view that there was consistent effort. It seems like your brief was saying it's okay that there was a gap, because at some point it's okay for someone to just say, I think I'm out of options. Does that, do I understand your position? Because that's not what Judge McConnell said. I didn't understand. First of all, I think Judge McConnell's written order sort of superseded anything that he may have said from the bench. But I didn't read his written order to indicate that he thought that litigation was necessarily continuing for the entire time Mr. Astutino was in Guatemala. He did speak about the lengthy process of immigration litigation. But I didn't glean from that, as the government seemed to, that that meant. Which was long over, though, right? I mean, that was long over. I mean, the facts are, the facts here, which are that, you know, this court denied. How do we deal, I mean, I guess I'm getting, let me just get to it. How do we get to your friend's argument, which is how do we deal with the problem of, well, if your position is correct, that he can just wait until it suits him and now is the time I either want to investigate it or spring the argument I knew I had, whichever it is. How do you deal with that when finality is certainly a concern? Well, I disagree respectfully that he waited until it suited him. He was given bad legal advice, which told him that, you know, his only ways to fight this were through CAT or through withholding of removal. There's certainly, it's different than some of the circuit cases where the petitioner is in the United States and he's taking a wait and see approach because he's waiting to see if he's going to be. My response here, I guess, would be, well, there were definitely resources available to this person. That seemed clear. There were connections in the United States. There were ways to probably access lawyers, it seems like. So what, how do we deal with that? I mean, your argument would be it's okay for there to be a several-year gap. And, you know, this is sympathetic, don't get me wrong, but we have to write for other cases. And so how do you deal with that problem when there's no real impediment, it's just not moving forward? Well, again, I think that that was a direct result of the bad advice that he received from his immigration attorney. I would also note that. But that's the same as any ineffective assistance of counsel of any topic you got. And so is it you just, what's the outer principle that limits how long it can go? I think these cases are all over the map in terms of what is an acceptable number of years. But, again, he was, for some of that time, he did have litigation pending in this court. The quorum nobis cases do talk about whether he's pursuing other means. Certainly for some of that period of time he was pursuing other means in the immigration court. And, again, he was not taking a wait and see approach. This was not for any strategic reason. Of course it was. I'm sorry? So he pled guilty. What year did he plead guilty? 2014. Okay. And what year is it now? It's 2025. All right. So the notion is that he now gets to withdraw his plea and the government then has to proceed ten years later to prove the crime. And you say there's no prejudice? I'm unaware of any case saying if there's a ten-year delay and witnesses are lost and memories are lost, that ten years is presumptively not prejudicial to bringing a renewed prosecution? Well, a couple of responses. First of all, the ten years is not the time period that we're talking about here because he has obviously been involved in litigation for a substantial amount of that time. But, you know, in addition, again, the government hasn't shown any prejudice. Not that this is necessarily required, but that is something that they brought up in the quorum nobis hearing. And, again, these cases are very fact-specific. And here Mr. Asituna was trying to pursue immigration relief. He had an immigration attorney who gave him bad advice, essentially, and it is well within this Court's discretion to find that Judge McConnell did not abuse his discretion in finding a reasonable delay. Thank you, Counsel. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce herself on the record to begin? She has a two-minute rebuttal. May it please the Court, I have three brief points. First, at pages of the government's appendix, pages 100 and 101, that is Mr. Watt's testimony that he says he did not discuss a permanent bar because, in his view, there wasn't a permanent bar because there was always ways to get around it. And he goes on for a few sentences about that. So I don't think it's fair to say he simply didn't know of the existence. He just had a different view of how to implement it. Second, if you look at 8 U.S.C. 1182A9A and compare it to 8 CFR 212.2, the statute refers to a permanent bar. The regulation interpreting the statute says it's a 20-year bar. So to say that the law is clear, it's not. Finally, Justice Alito's concurrence in Padilla specifically talks about instances of a barrier to reentering the country as one of the downstream consequences of the court, the majority's decision in Padilla, that he was worried about how would this be handled in future cases. So at least in Justice Alito's view, and I'm sure in Justice Scalia's as well, the court's holding did not encompass anything besides deportation. For those reasons, I ask that you quash the petition in reverse. Thank you. Thank you, counsel. Thank you, counsel. That concludes argument in this case. Counsel is excused.